IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **PATRICK DUNN and HOPE ELLY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RIVERBOAT CORPORATION OF** | ) | 1:18-cv-239-HSO-JCG |
| **MISSISSIPPI, GOLDEN NUGGET** | ) | |
| **BILOXI, INC., and FERTITTA** | ) | |
| **ENTERTAINMENT, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFFS' COMPLAINT

## I.     INTRODUCTION

Plaintiffs, Patrick Dunn, and Hope Elly, file this Title III, ADA action, pursuant to 42 U.S.C. § 12181, et. seq. In Count One of the Complaint, Plaintiffs seek to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiffs seek to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiffs seek to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to design and construct the establishment to be readily accessible to and usable by individuals with disabilities. In Count Five, Plaintiffs seek to enjoin Defendants to remediate their website that fails to show the accessible features of Golden Nugget. In Count Six, Plaintiffs seek to enjoin Defendants' use of the reservation system which screens out the disabled from being able to make reservations for a hotel room with accessible features for

the disabled. In Count Seven, Plaintiffs seek to enjoin Defendants to remediate their website that fails to integrate an accessible platform to be usable by disabled individuals. In Count Eight, Plaintiffs seek to enjoin Defendants' failure to take the necessary steps to ensure Plaintiffs are not denied services, segregated or otherwise treated differently than other individuals who do not have disabilities through the use of the mobile software applications.

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.    Venue is proper in this Court, the United States District Court for the Southern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.    Plaintiff, Patrick Dunn, resides in Andalusia, Alabama. On March 8, 2001, Mr. Dunn was in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair and restricted his ability to use his hands, arms, and legs. Mr. Dunn is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

4.      Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have affected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

5.      Defendant, Riverboat Corporation of Mississippi, (hereinafter "Riverboat") is a corporation that is both registered to do business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from the property records on the Harrison County GIS Internet Report, Riverboat Corporation of Mississippi, "owns" the real property and improvements located at 151 Beach Blvd, Biloxi, MS 39530 (the "Golden Nugget"). The Golden Nugget is a place of public accommodation pursuant to 42 U.S.C. §12181(7). The Golden Nugget is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. §12181(2)(A). Moreover, the establishment features restaurants, a hotel, casino games, shopping, and other

entertainment which qualifies Golden Nugget as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

6. Defendant, Golden Nugget Biloxi, Inc., (hereinafter "Golden Nugget Biloxi"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Golden Nugget Biloxi, Inc., "operates" Golden Nugget Biloxi Hotel & Casino located at 151 Beach Blvd., Biloxi, MS 39530 42 U.S.C. § 12182. Golden Nugget is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the establishment offers restaurants, a hotel, casino games, shopping, and other entertainment which qualifies Golden Nugget as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

7. Defendant, Fertitta Entertainment, Inc., (hereinafter "Fertitta"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Fertitta Entertainment, Inc., "owns" the public internet website www.goldennugget.com and the Golden Nugget mobile application and its goods and services offered on the mobile app, and "operates" the world-wide websites services and mobile application services that are available to the public at Golden Nugget. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures,

and further, providing auxiliary aids and services to its web-based services and mobile application services. 42 U.S.C. § 12182.

8.   Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a place of lodging offering guest rooms for stays that are short term in nature; a variety of restaurants for food and drink, retail items for purchase, and other entertainment activities to the public. Accordingly, it is covered by the ADA and must comply with the Act.

9.   Defendants' resort itself is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(a), which provides:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce:
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

In particular, the hotel rooms are a "place of lodging", pursuant to 28 C.F.R. § 36.104, which provides:

> *Place of public accommodation* means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories –
>
> (1) Place of lodging, except for an establishment located within a facility that contains not more than five rooms for rent or hire and that actually is occupied by

the proprietor of the establishment as the residence of the proprietor. For purposes of this part, a facility is a "place of lodging" if it is –

  (i) An inn, hotel, or motel; or

  (ii) A facility that –

    (A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and

    (B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following –

      (1) On- or off-site management and reservations service;

      (2) Rooms available on a walk-up or call-in basis;

      (3) Availability of housekeeping or linen service; and

      (4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.

10.    Plaintiffs' stay at the resort establishes their conformity to the elements of 28 C.F.R. § 36.104, because the resort was rented to them for a short-term stay, (less than 30 days); Upon Plaintiffs' arrival at Golden Nugget, they were required to check in at the front desk with an employee of Golden Nugget; Plaintiffs had the opportunity to have housekeeping services during their stay; Plaintiffs did not have the right to return to their specific room after they

checked-out of their hotel room at the front desk; the services provided were similar to other hotels or motels in that there was onsite employees and a reservation system, as well as reservations accepted without guaranteeing a particular room until check–in and without a prior lease; and housekeeping or linen service was available.

11.    All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendants are citizens thereof.

12.    Plaintiff Patrick Dunn enjoys vacationing in Biloxi, Mississippi because he enjoys the different type of entertainment that the Gulf Coast offers as well as the nightlife. Mr. Dunn enjoys the outgoing social lifestyle whether it is playing casino games or enjoying the night life at the resorts that offer all sorts of social activities and entertainment. More specifically, Mr. Dunn enjoys Golden Nugget, which is the subject of this action. Mr. Dunn specifically and definitely intends to continue going to Golden Nugget when he travels to the Gulf Coast because he enjoys the establishment including the live entertainment. Mr. Dunn does not know exactly when he will go back to Golden Nugget because he has not planned out every trip nor every meal for the rest of his life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*"). Mr. Dunn definitely intends to return to Golden Nugget, however,

not only to enjoy the nightlife, sleep, play casino games, drink, eat, and enjoy the entertainment and other social activities, but also to see if Golden Nugget will do the repairs to become ADA compliant and will continue to do so in the future to ensure Defendant maintains its resort and casino to accessibility standards. Mr. Dunn will continue to return even after the repairs are made because Golden Nugget getaways are attainable for just about everyone, whether its floating atop a daybed at H20 pool, watching a stack of chips grow at a blackjack table, taking a sip of a Daiquiri at the swim-up bar, experiencing the best meal of your life in one Golden Nugget's signature restaurants, or ordering room service and enjoying a meal in a room that inspires a relaxed state of being, Golden Nugget offers resort-style luxuries for everyday escapes, making everyday life extraordinary.

13. Mr. Dunn planned a trip to the Mississippi Gulf Coast to go and enjoy the Mini-Vegas atmosphere playing casino games. Mr. Dunn enjoys the live events in the Gulf Coast area and has attended events on many occasions. Mr. Dunn went online to the Golden Nugget website, www.goldennugget.com, to determine if Golden Nugget would meet his accessibility needs while he was planning his trip to the Biloxi area, but was unable to do so whatsoever, which is a failure by Defendants to properly maintain their website and reservation system in accordance with the ADA. As a result of Defendants' failure, Mr. Dunn was unable to determine any accessible features of the hotel suites and casino itself because Defendants do not identify and describe the accessible features in any form or fashion whatsoever other than the standard rooms. Nor

was Mr. Dunn afforded the opportunity to make reservations online because Mr. Dunn was not able to determine any suites that are accessible, whereas other individuals without disabilities are able to reserve non-accessible suites. Due to the lack of accessibility on Defendants' website and reservation system, Mr. Dunn made reservations, and despite not being afforded the same opportunity as an individual who does not require accessibility needs, made do with the unequal treatment. When Mr. Dunn arrived at Golden Nugget, the allegedly accessible parking spaces were not compliant in anyway. Mr. Dunn's attending aids had trouble assisting Mr. Dunn from the passenger seat of his car into his wheelchair because there were not any adjoining access aisles that were level surfaces. Mr. Dunn finally got inside and was forced to use the check in counter at which point Mr. Dunn was frustrated because the check-in counter was so tall that from his wheelchair he communicated with the counter side wall because he could not see over it to interact with the Golden Nugget employee. Mr. Dunn could neither independently complete the commercial transaction by swiping his own credit card, because the credit card machine was mounted on top of the utterly non-compliant counter nor could he sign anything because there was no accessible writing surface readily available. All of which could have been avoided if Defendants' mobile application was accessible and usable by the disabled. Because Mr. Dunn uses his voice recognition software and the assistive technology since he has limited use of his hands, he can, therefore, independently make reservations, check in, etc. as a result of accessible mobile technology provided the universe. Mr. Dunn, out of

his prior experiences at other resorts, communicated through the check-in counter wall with the front desk worker of Golden Nugget to inquire again if there was an accessible room with an adjoining non-accessible room. Mr. Dunn was assured it was accessible, however, the allegedly accessible room was not accessible to Mr. Dunn. During Mr. Dunn's stay, he enjoyed playing the casino games, however, he did not enjoy the Defendants' players card reader on the games, because Mr. Dunn was required to insert the players card into the machine in such a way that all the machines made it impossible for Mr. Dunn to grasp and retrieve his players card when he finished playing. Instead, Mr. Dunn was forced to ask a stranger for assistance to retrieve his card which made Mr. Dunn feel as if he were treated unfairly because people who are not disabled are able to retrieve their players card without seeking assistance. Mr. Dunn does not understand why Defendants did not consider him or other disabled individuals who have limited use of their hands when implementing the players card readers on the machines because disabled individuals enjoy casino games just like non-disabled enjoy the casino games. Throughout Mr. Dunn's visit, he went from the parking lot to the entranceways, from the parking lot to and throughout the hotel, including his rented hotel room, the services areas, bathrooms, shopping areas, pool area, H20 Bar & Grill casino, the Resorts common areas and its associated amenities, Morton's Steakhouse, The Buffet, Lillie's, Michael Patrick's, Bubba Gump Shrimp Co., Starbucks, Rush Lounge, paths of travel, recreational areas, and the fitness center. Mr. Dunn, accordingly, has standing as to all the areas he visited. During this

vacation, he encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Mr. Dunn absolutely wants to return to Golden Nugget and Mr. Dunn will definitely do so in the near future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

**14.**     Plaintiff Hope Elly vacations in the Gulf Coast because she enjoys the relaxing beach environment as well as the entertainment the Gulf Coast offers. Ms. Elly enjoys the laid-back beach environment and resorts that offer all sorts of activities and entertainment. More specifically, Ms. Elly enjoys Golden Nugget, which is the subject of this action. Ms. Elly specifically and definitely intends to continue going to Golden Nugget when she travels to the Gulf Coast. Ms. Elly does not know exactly when she will go back to Golden Nugget because she has not planned out every trip nor every meal for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. Elly definitely intends to return to Golden Nugget, however, not only to sleep, play casino games, drink, eat, and enjoy the entertainment and other activities but also to see if Golden Nugget will do the repairs to become ADA compliant. Ms. Elly will continue to return even after the repairs are made because Golden Nugget getaways are attainable for just about

everyone, whether its floating atop a daybed at H20 pool, watching a stack of chips grow at a blackjack table, taking a sip of a Daiquiri at the swim-up bar, experiencing the best meal of your life in one Golden Nugget's signature restaurants, or ordering room service and enjoying a meal in a room that inspires a relaxed state of being, Golden Nugget offers resort-style luxuries for everyday escapes, making everyday life extraordinary.

15.   Ms. Elly and her best friend enjoy going on short vacations to the Gulf Coast to enjoy the relaxing beach environment and the assortment of adult entertainment like casino games. Ms. Elly recently went online to www.goldennugget.com to make reservations for a weekend get away with her best friend. During Ms. Elly's experience with making the travel plans, she tried to determine if Golden Nugget would meet her accessibility needs but was unable to do so as a result of Defendants' failure to properly identify and describe the accessible features of the hotel rooms on the website. As a result of the discriminatory acts by Defendants, Ms. Elly further searched through the Golden Nugget website to determine if the hotel had any accessible features at all, or at the very least, assess whether the establishment would be large enough for her to make do since Defendants' website failed to identify any of Golden Nugget's accessible features. Her review of the Defendants' website was inconclusive because the website lacked sufficient information. Ultimately, Ms. Elly decided to go to the Golden Nugget because of its variety of live entertainment, restaurants, amenities, and spectacular views of the Mississippi Gulf Coast, so she made reservations and went there with her best friend.

During Ms. Elly's visit she went from the parking lot to the entranceways, from the parking lot to and throughout the hotel, including her rented hotel room, the services areas, bathrooms, pool area, casino, paths of travel, common areas, recreational areas, and the fitness center. Ms. Elly accordingly, has standing as to all the areas she visited. During this vacation, she encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Ms. Elly wants to return to Golden Nugget, and Ms. Elly will do so in the near future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

16.    Because of the barriers described below in paragraph 29, and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendants' premises on the basis of their disabilities.

17.    Plaintiffs accordingly, have Article III standing to pursue this case because (1) they are disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' hotel, casino and other entertainment complex is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) they have suffered a concrete and particularized injury by being denied access to Golden Nugget by architectural barriers, by being denied access by the Defendants' practices described throughout this Complaint, and by Defendants' denial of the use of Golden Nugget for their full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 27.

### III.    PLAINTIFFS' CLAIMS

__ADA, Title III__

18.    On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

19.    Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it provides transient lodging, as described above and defined by regulation; and it further offers a variety of restaurants for food and drink, retail items for purchase, and other entertainment activities to the public. Accordingly, it is covered by the ADA and must comply with the Act.

### COUNT ONE
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

__Defendants' Existing Facilities Are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in This Complaint__

20.    Plaintiffs are informed and believe based on publicly available information that Golden Nugget Biloxi Hotel & Casino located at 151 Beach Blvd, Biloxi, MS 39530, was reconstructed in 2013.

21.    Plaintiffs are further informed and believe based on publicly available information that Golden Nugget Biloxi Hotel & Casino located at 151 Beach Blvd, Biloxi, MS 39530 underwent alterations and/or improvements to the

establishment after 2013.

22.     The ADA was enacted requiring that facilities constructed prior to January 26,
        1992, are considered an "existing" "facility, such that those facilities must
        remove architectural barriers where such removal is readily achievable. 42
        U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after
        January 26, 1992, and all "new construction" after January 26, 1993, must be
        *readily accessible to and usable by individuals with disabilities*, including *individuals
        who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily
        accessible to and usable by. . ." is the "new construction" standard, which
        requires compliance with the Department of Justice standards. 42 U.S.C. §
        12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily
        accessible and usable buildings constructed under the "new construction"
        standards is if the design and construction of the building to be readily accessible
        and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The
        "structural impracticability" defense applies only in rare circumstances of
        extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable
        by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2).
        "Alterations" must be made to the maximum extent feasible. 42 U.S.C. §
        12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public
        accommodation or commercial facility that affects or could affect the usability
        of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

23.     New construction and alterations must comply with either the Justice
        Department's 1991 Standards for Accessible Design, or the 2010 Standards for

Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or

after March 15, 2012, be made accessible in accordance with the 2010 Standards." Moreover, please note that 28 C.F.R. § 36.304(d), Appendix provides: "Elements that do not comply with the requirements for those elements in the 1991 Standards or that do not comply with the supplemental requirements (i.e., elements for which there are neither technical nor scoping specifications in the 1991 Standards), must be modified to the extent readily achievable" in accordance with the 2010 Standards.

24.   For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction**

25.   The Defendants have discriminated, and continue to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Golden Nugget in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b). Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

26.   As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and equal access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' facility.

Plaintiffs' access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

27.   Plaintiffs have definite plans to return to Golden Nugget in the future, as described in paragraphs 12-15. Plaintiffs will return to Golden Nugget within the next few months not only to stay, shop, eat, drink, and enjoy other entertainment, but also to see if Golden Nugget has repaired the barriers, and changed its practices and procedures. Plaintiffs will continue to do so in the near future and even when Golden Nugget is repaired. Also, and of vital importance, the barriers are not just created by construction issues; instead many of them are created by human activity, from the way management and workers at Golden Nugget use Golden Nugget's physical facilities. The barriers created by human activity will need to be reviewed forever, to be sure Defendants' management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of their disabilities. As persuasive authority and also as a matter of common sense, the Eleventh Circuit, held in *Houston v. Marod Supermarkets*, that when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store*." Due to the definiteness of

Plaintiffs' future plans to continue visiting the subject facility and their past patronage, there exists a genuine threat of imminent future injury, *Houston v. Marod, supra*. Plaintiffs' intent to return is plausible, as pleaded above. *Houston, supra*.

## Architectural Barriers

28. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

29. Plaintiffs have been throughout all the parking areas at Golden Nugget and from the parking areas to the entrances, to and throughout the retail areas, the retail areas themselves, from the entrances to and throughout the restrooms, the restrooms themselves; from the entrances to and throughout the dining areas, the dining areas themselves, the common areas including the hotel lobby, casinos, arcade, and fitness area, the sales and service counters, throughout circulation paths and accessible routes, from the parking areas to and throughout the common areas including the retail and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendants' facility located at 151 Beach Boulevard, Biloxi, Mississippi 39530, more commonly known as "Golden Nugget", violates the ADA in the hotel guest rooms, check-in and lobby area, parking areas, the entranceways, from the parking areas to and throughout the common areas and the retail service areas, bathrooms, paths of travel, common areas, and in particular but not limited to:

**PARKING AREAS**

A.      Defendants provide a parking structure with parking spaces that have routes connecting the parking spaces in the parking structure to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces   to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

(2) The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide

minimum and connect to an accessible route to the entrance of the establishment;

(3) The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

(4) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that

the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

B.     Defendants provide a parking structure with parking spaces that have routes connecting the parking spaces in the parking structure to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

(2) The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle,

in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

(3) The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

(4) The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted

60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

## GUEST ROOMS

**C.** Defendants provide hotel rooms for able bodied individuals but fails to provide ADA accessible hotel rooms for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Golden Nugget which includes but is not limited to the following failures of Defendants:

**(1)** There is not the required amount of ADA accessible guest rooms that provide the required level of ADA compliant toilet and bathing facilities within the guest rooms;

**(2)** The allegedly accessible guest rooms fail to provide ADA compliant shower compartments which includes both the transfer type

compartments and its associated accessible elements and roll-in shower compartments and its associated accessible elements;

**(3)** The existing shower compartments fail to provide grab bars that conform to the ADA Standards for Accessible Design which prohibits disabled individuals from being afforded the opportunity to independently use the compartment;

**(4)** The existing practice at Golden Nugget is to provide disabled individuals with portable bench seats for the showers rather than making its guest rooms compliant with the ADA Standards for Accessible Design;

**D.**      Defendants provide an elevator for able-bodied individuals, but fails to provide an ADA accessible elevator for non-able-bodied individuals, which includes but is not limited to the following failures by Defendants:

**(1)** Defendants require guests to use the room key card to activate the elevator which has a discriminatory effect in practice of requiring individuals with disabilities from independently being afforded the opportunity to ride the elevator up to their room;

## ESSENTIALS SOUVENIR SHOP

**E.**      Defendants provide a sales and service counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage,

or accommodation that is equal to that experience afforded to other
individuals without disabilities, which includes but is not limited to the
following failures of Defendants:

**(1)** There is not at least one of each type of sales counter and service
counter that is maintained in conformance with the ADA
Standards for Accessible Design in all the ways that are required to
be readily accessible to and usable by disabled individuals which
has the discriminatory effects of rendering the counter, its
associated elements, and services offered at the counter as unusable
by disabled individuals;

**(2)** There is not at least one of each type of sales counter and service
counter that is maintained in operable condition by conforming
with the ADA Standards for Accessible Design so that the
accessible counter and its associated elements are located adjacent
to a walking surface;

**(3)** There is not  at least one of each type of sales counter and service
counter that is maintained in operable condition by conforming
with the ADA Standards for Accessible Design so that a portion of
the counter surface that is 36 inches long minimum and 36 inches
high maximum above the finish floor is readily usable by disabled
individuals which includes maintaining a clear floor or ground
space complying with 305 positioned for either a parallel approach
adjacent to the 36 inch minimum length of counter, or,

alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

(4) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

(5) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

(6) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording

disabled individuals an unequal opportunity to independently

transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the

sales/service counter that are required to be readily accessible to

and usable by individuals with disabilities;

## STYLE & TREND

**F.** Defendants provide an accessible route to and throughout the shopping retail

aisles for able-bodied individuals but fails to provide an ADA accessible route

to and throughout the retail shopping aisle for individuals with disabilities

which prohibits individuals with disabilities from the full and equal opportunity

to access the goods and services at Defendants' store;

**(1)** Defendants fail to maintain the retail store aisles accessible route in

conformance with the ADA Standards for Accessible Design in all

the ways that are required to be readily accessible to and usable by

disabled individuals which includes but is not limited to maintaining

at least one accessible route that connects the facility entrance with

all accessible spaces and elements within the facility which are

otherwise connected by a circulation path;

**(2)** Defendants fail to maintain the retail store aisles accessible route in

conformance with the ADA Standards for Accessible Design in all

the ways that are required to be readily accessible to and usable by

disabled individuals which includes but is not limited to maintaining

the self-service shelves on an accessible route;

**(3)** Defendants fail to maintain the retail store aisles accessible route in operable condition by conforming with the ADA Standards for Accessible Design so that the required clear walking surfaces and its associated elements are not rendered unusable by the disabled as a result of the display tables, clothing racks, and among other items obstructing the clear floor walking surface;

**(4)** Defendants fail to maintain the retail store aisles accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the accessible routes clear width at turns and/or passing spaces which has the discriminatory effects of rendering the shopping aisles, including its goods, as unusable by the disabled;

**(5)** Defendants' use of their merchandise display racks is positioned in a way that has a discriminatory effect in practice of prohibiting individuals with disabilities from being afforded the opportunity to maneuver to and throughout the retail shopping aisles and turning to maneuver throughout the adjacent shopping aisle;

**(6)** Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and

services are readily accessible to and usable by individuals with disabilities;

**(7)** Defendants have ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

**G.** Defendants provide a sales and service counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

**(2)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming

with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

**(3)** There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the

discriminatory effects of rendering the counter and its associated

benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of sales counter and service

counter that is maintained in operable condition with the ADA

Standards for Accessible Design so that accessible counter extends

the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of sales counter and service

counter that is maintained in operable condition with the ADA

Standards for Accessible Design so that a credit card payment

terminal is positioned or otherwise maintained in a readily

accessible to and independently usable location at the accessible

counter which has the discriminatory effects in practice of affording

disabled individuals an unequal opportunity to independently

transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the

sales/service counter that are required to be readily accessible to

and usable by individuals with disabilities;

**H.**     Defendants provide a dressing room for able-bodied individuals, but fails to

afford non-able-bodied individuals the same opportunity to participate in or

benefit from a good, service, facility, privilege, advantage, or accommodation

that is equal to that experience afforded to other individuals without

disabilities, which includes but is not limited to the following failures of

Defendants:

(1) There is not at least 5%, but no fewer than one, of each type of dressing room in each cluster of rooms that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the dressing room and its associated elements as unusable by disabled individuals;

(2) There is not at least 5%, but no fewer than one, of each type of dressing room in each cluster of rooms that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the required t-shaped and/or circular turning space within the dressing room does not prohibit disabled individuals from maneuver independently throughout the room;

(3) There is not at least 5%, but no fewer than one, of each type of dressing room in each cluster of rooms that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the door swings outwards and/or provides the required 30x48 inches of clear floor space beyond the arc of the door swing;

(4) There is not at least 5%, but no fewer than one, of each type of dressing room in each cluster of rooms that is maintained in operable condition by conforming with the ADA Standards for Accessible

Design so that the bench and its associated requirements are not restricting the dressing rooms usability by disabled individuals;

(1) The dressing room fails to maintain a bench seat in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the bench seat and parallel to the short axis of the bench;

(2) The dressing room fails to maintain a bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

(3) The dressing room fails to maintain a bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the bench seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so

that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

(4) The dressing room fails to maintain a bench seat in conformance with the ADA Standards for Accessible Design so that the top of the bench seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

(5) The dressing room fails to maintain a bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the bench so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the bench is not rendered unusable by the disabled;

(5) There is not at least 5%, but no fewer than one, of each type of dressing room in each cluster of rooms that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the coat hook measures the required height for unobstructed and/or obstructed reach ranges;

## THE CHOCOLATE BOX

I.     Defendants provide a sales and service counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2) There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface complying with 403;

(3) There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the

counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## POOL AREA

**I.** Defendants provide a swimming pool for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

**(1)** Defendants fail to provide at least two accessible means of entry for an individual with a disability to be afforded the opportunity to get into the pool;

**(2)** The pool fails to provide a lift which prohibits a wheelchair dependent individual from accessing the pool and enjoying the Resort Amenities;

**(3)** Defendants fail to provide 30x48 inches of required clear floor or ground space for a disabled individual to approach the accessible seating by the pool;

**J.**    Defendants fail to provide an accessible route to the cabana seating area around the pool;

**K.**    Defendants provide a poolside seating area for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following failures of Defendants:

**(1)** Defendants fail to provide at least five percent (5%) poolside seating that conforms to the ADA Standards for Accessible Design;

**(2)** There is no ADA accessible poolside seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

**(3)** Defendants fail to provide poolside seating that is 20 inches deep minimum and 24 inches deep maximum;

**(4)** There is not at least one seat in the poolside seating area that is 17 inches minimum and 19 inches maximum above the finished floor;

**(5)** There is not 36 inches of clear floor or ground space around the poolside seating for a wheelchair user to be able to approach and transfer onto the seating;

**(6)** Defendants position and arrange the poolside seating in a way that makes it nearly impossible for disabled individuals to use the seating which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lounge seating by the pool;

**L.**  Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the H2O Pool Bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the H2O Pool Bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the

outdoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the H2O Pool Bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the H2O Pool Bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the H2O Pool Bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

## MEN'S RESTROOM NEAR MORTON'S

**M.**    Defendants provide a men's restroom downstairs near Morton's for able-bodied individuals, but fails to afford non-able-bodied individuals the same

opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2) There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3) The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)**  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)**  The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise  located on the openside of the water closet;

(9) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispensers operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

(10) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

(11) Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

N.   Defendants provide a lavatory in the men's restroom downstairs near Morton's for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

(2) There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

(3) The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

(4) The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not

require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## WOMEN'S RESTROOM NEAR MORTON'S

**O.**     Defendants provide a women's restroom downstairs near Morton's for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)**     The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)**     There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the

maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required

maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the

transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**P.**     Defendants provide a lavatory in the women's restroom downstairs near Morton's for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   **(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

   **(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

   **(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

   **(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require

the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## MEN'S RESTROOM NEAREST ESCALATORS

**Q.**     Defendants provide a men's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and

maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2) There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3) The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

(4) The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the

top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet

compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**R.**     Defendants provide a lavatory in the men's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)**     The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)**     There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)**     The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so

that the knee and toe clearance is not restricting the usability by disabled individuals;

(4) The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## WOMEN'S RESTROOM NEAREST ESCALATORS

S.    Defendants provide a men's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that

are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2)    There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3)    The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of

12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible

design and is otherwise located 7-9 inches from the front of the
water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet
compartment in operable condition or otherwise configured in
away by conforming with the ADA Standards for Accessible
Design so that the toilet compartment maintains a toilet
compartment door and its associated hardware in a accessible and
usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom
that are required to be readily accessible to and usable by
individuals with disabilities;

**T.**    Defendants provide a lavatory in the men's restroom near the ballrooms for
able-bodied individuals, but fails to afford non-able-bodied individuals the
same opportunity to participate in or benefit from a good, service, facility,
privilege, advantage, or accommodation that is equal to that experience
afforded to individuals without disabilities, which includes but is not limited to
the following failures of Defendants:

**(1)**   The lavatory fails to be maintained in conformance with the ADA
Standards for Accessible Design in all the ways that are required to
be readily accessible to and usable by disabled individuals which
has the discriminatory effect of rendering the lavatory sink and its
associated elements as unusable by the disabled;

(2)   There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

(3)   The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

(4)   The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5)   There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6)   There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## MEN'S RESTROOM NEAR BALLROOMS

U.   Defendants provide a men's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same

opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2) There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3) The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

(9) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

(10) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

(11) Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

V. Defendants provide a lavatory in the men's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not

require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## WOMEN'S RESTROOM NEAR BALLROOMS

**W.**   Defendants provide a women's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)**   The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)**   There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the

maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required

maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the

transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**X.**     Defendants provide a lavatory in the women's restroom near the ballrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require

the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## MEN'S RESTROOM NEAR THE CHOCOLATE BOX

**Y.**     Defendants provide a men's restroom downstairs near The Chocolate Box for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and

maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the

top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet

compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**Z.** Defendants provide a lavatory in the men's restroom downstairs near The Chocolate Box for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that

the knee and toe clearance is not restricting the usability by disabled

individuals;

(4) The paper towel dispenser fails to be maintained in a usable

condition so that the dispenser and its operable parts do not require

the use of tight grasping, twisting, and/or pinching of the wrist or

otherwise restrict the continuous flow of paper;

(5) There is not at least one lavatory with a mirror that is maintained in

a usable condition so that the bottom reflecting surface of the mirror

measures a maximum of 40 inches above the finished floor;

(6) There is not at least one lavatory with a soap dispenser that is

maintained in a usable condition so that the dispenser does not

require the use of two hands to operate and/or require tight

grasping, twisting, and/or pinching of the wrist;

## WOMEN'S RESTROOM NEAR THE CHOCOLATE BOX

AA.    Defendants provide a women's restroom downstairs near The Chocolate Box

for able-bodied individuals, but fails to afford non-able-bodied individuals the

same opportunity to participate in or benefit from a good, service, facility,

privilege, advantage, or accommodation that is equal to that experience

afforded to other individuals without disabilities, which includes but is not

limited to the following failures of Defendants:

(1)  The restroom entrance door fails to be maintained in conformance

with the ADA Standards for Accessible design in all the ways that

are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

(4)   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

(5)   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

(6)   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of

12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible

design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**BB.**   Defendants provide a lavatory in the women's restroom downstairs near The Chocolate Box for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## CASINO AREA

**CC.**   Defendants provide players club cards for able bodied individuals to enjoy rewards and other benefits at the casino games but fails to provide that same

level of service to disabled individuals which includes but is not limited to the following failures of Defendants:

> **(1)** The players club card machine requires the use of tight grasping, twisting, and pinching of the wrist;

**DD.**     Defendants provide casino games for able bodied individuals but fails to provide that same experience by providing ADA accessible arcade games to non-able-bodied individuals, including but not limited to the following failures of Defendants:

> **(1)** The casino games do not provide the required clear floor or ground space for an individual with a disability to approach the game;

**EE.**     Defendants provide cashier counters for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

> **(8)** There is not at least one of each type of cashier counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory

effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

**(9)** There is not at least one of each type of cashier counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

**(10)** There is not at least one of each type of cashier counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(11)** There is not at least one of each type of cashier counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but

is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

(12)    There is not at least one of each type of cashier counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

(13)    There is not at least one of each type of cashier counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

(14)    Defendants fail to maintain the accessible features of the cashier counters that are required to be readily accessible to and usable by individuals with disabilities;

FF.    Defendants provide a bar disbursed throughout the establishment for the consumption of food or drink at the Bar46 area in the casino for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to

inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Bar46 area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Bar46 area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Bar46 area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Bar46 area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

GG.   Defendants provide lounge bench seating in Bar46 for able-bodied individuals to sit and relax while waiting to be seated at a table, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the bench seat and parallel to the short axis of the bench;

(2) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat

that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

**(3)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the bench seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that the top of the bench seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the bench so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener,

mounting device, or supporting structure, the bench is not rendered unusable by the disabled;

**HH.**    Defendants provide a bar disbursed throughout the establishment for the consumption of food or drink at the Rush Lounge area in the casino for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)**    There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Rush Lounge area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)**    There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Rush Lounge area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3)  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Rush Lounge area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4)  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the Rush Lounge area that is maintained  in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

II.      Defendants provide lounge seating in Rush Lounge for able-bodied individuals to sit and relax while waiting to be seated at a table, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1)  Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that a clear floor

or ground space is provided and positioned at the end of the bench seat and parallel to the short axis of the bench;

**(2)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

**(3)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the bench seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that the top of the bench seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

**(5)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the bench so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the bench is not rendered unusable by the disabled;

**JJ.** Defendants provide a bar disbursed throughout the establishment for the consumption of food or drink at the High Limits area in the casino for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the High Limits area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

(2) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the High Limits area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the High Limits area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the High Limits area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

KK.   Defendants provide lounge bench seating in the High Limits area for able-bodied individuals to sit and relax, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good,

service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the bench seat and parallel to the short axis of the bench;

(2) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

(3) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the bench seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that the top of the bench seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

**(5)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the bench so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the bench is not rendered unusable by the disabled;

**LL.**   Defendants provide a cashier counter in the High Limits area for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least one of each type of cashier counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory

effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

**(2)** There is not at least one of each type of cashier counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

**(3)** There is not  at least one of each type of cashier counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of cashier counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but

is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of cashier counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of cashier counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the cashier counter that are required to be readily accessible to and usable by individuals with disabilities;

## FITNESS CENTER

**MM.**     Defendants provide a fitness center for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation

that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following failures of Defendants:

> **(1)** Defendants fail to provide at least one type of each exercise machine with the clear floor or ground surface for a wheelchair user to be able to approach the equipment;

> **(2)** Defendants fail to maintain an adjacent accessible route to the exercise machines clear floor space which prohibits individuals with disabilities from being afforded the opportunity to maneuver in the fitness room;

> **(3)** Defendants fail to maintain the accessible features within the fitness center that are required to be readily accessible to and usable by individuals with disabilities;

## SPA & SALON

**NN.** Defendants provide sales and service counters for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

> **(1)** There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards

for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

**(2)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

**(3)** There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**OO.**  Defendants provide lounge bench seating in the spa and salon area for able-bodied individuals to sit and relax while waiting for their relaxing spa service, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the bench seat and parallel to the short axis of the bench;

(2) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

(3) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the bench seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface

to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

(4) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that the top of the bench seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

(5) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the bench so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the bench is not rendered unusable by the disabled;

## CHECK-IN FRONT DESK AREA

PP.   Defendants provide a check-in counter for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals

without disabilities, which includes but is not limited to the following failures of Defendants:

(1) There is not at least one of each type of check-in counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2) There is not at least one of each type of check-in counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

(3) There is not  at least one of each type of check-in counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space

complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of check-in counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of check-in counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of check-in counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

(7) Defendants fail to maintain the accessible features of the check-in counter that are required to be readily accessible to and usable by individuals with disabilities;

**THE BUFFET**

QQ.   Defendants provide a food selection counter for able-bodied individuals to receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1)   There is not at least one of each type of service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2)   There is not at least one of each type of service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

(3) There is not  at least one of each type of service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

(4) There is not at least one of each type of service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

(5) There is not at least one of each type of service counter that is maintained in operable condition with the ADA Standards for

Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the food selection counter that are required to be readily accessible to and usable by individuals with disabilities;

**RR.**    Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes hybrid booth dining surfaces, standard booth dining surfaces and standard dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is

maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)**  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained  in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the

surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**SS.**     Defendants provide a men's restroom in The Buffet for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design

requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not

obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

(8) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

(9) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

(10) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

(11) Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

TT.  Defendants provide a lavatory in the men's restroom in The Buffet for able-bodied individuals, but fails to afford non-able-bodied individuals the same

opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

**UU.** Defendants provide a women's restroom in The Buffet for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2)  There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3)  The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

(4)  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by

disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

(11) Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

VV.   Defendants provide a lavatory in the women's restroom in The Buffet for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

(2) There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

(3) The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

(4) The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

## MORTON'S THE STEAKHOUSE

WW.   Defendant provides a hostess counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities:

(1) There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the sales/service counter which prohibits individuals with disabilities from having the same opportunity to benefit from the goods,

services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

**(2)** The hostess counter exceeds the maximum allowed height of 36 inches above the finished floor which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

**(3)** The facility fails to maintain the accessible features at the hostess counter that are required to be readily accessible to and usable by individuals with disabilities which denies individuals with disabilities the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is the same experience offered to able bodied individuals;

**XX.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA

Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled

individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**YY.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes standard booth dining surfaces and standard dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)**  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained  in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**ZZ.**    Defendants provide a men's restroom in Morton's The Steakhouse for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that

are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of

54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**AAA.** Defendants provide a lavatory in the men's restroom in Morton's The Steakhouse for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory

sink measures a maximum of 34 inches above the finished floor and

positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in

conformance with the ADA Standards for Accessible Design so that

the knee and toe clearance is not restricting the usability by disabled

individuals;

**(4)** The paper towel dispenser fails to be maintained in a usable

condition so that the dispenser and its operable parts do not require

the use of tight grasping, twisting, and/or pinching of the wrist or

otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in

a usable condition so that the bottom reflecting surface of the mirror

measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is

maintained in a usable condition so that the dispenser does not

require the use of two hands to operate and/or require tight

grasping, twisting, and/or pinching of the wrist;

**BBB.** Defendants provide a women's restroom in Morton's The Steakhouse for able-

bodied individuals, but fails to afford non-able-bodied individuals the same

opportunity to participate in or benefit from a good, service, facility, privilege,

advantage, or accommodation that is equal to that experience afforded to other

individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA

Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by

disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's

operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**CCC.** Defendants provide a lavatory in the women's restroom in Morton's The Steakhouse for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has

the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

**LILLIE'S ASIAN CUISINE**

**DDD.** Defendants provide a hostess counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities:

(1) There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the sales/service counter which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

(2) The hostess counter exceeds the maximum allowed height of 36 inches above the finished floor which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

(3) The facility fails to maintain the accessible features at the hostess counter that are required to be readily accessible to and usable by individuals with disabilities which denies individuals with disabilities the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is the same experience offered to able bodied individuals;

**EEE.**    Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces

maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**FFF.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes high top dining surfaces and standard dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited

to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**MICHAEL PATRICK'S**

**GGG.**   Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with

the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**HHH.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes standard dining surfaces, standard booth dining surfaces, and high-top dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to

and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally

afforded the opportunity to sit and enjoy the goods and services at the establishment;

III.    Defendants provide lounge bench seating for able-bodied individuals to sit and relax while waiting to be seated at a table, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the bench seat and parallel to the short axis of the bench;

(2) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

(3) Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the bench seat being affixed to the wall, or maintaining a back support that is 42 inches

long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design so that the top of the bench seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

**(5)** Defendants fail to maintain a lounge bench seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the bench so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the bench is not rendered unusable by the disabled;

**JJJ.**     Defendants provide a quick service sales and service counter in Michael Patrick's for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2) There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface complying with 403;

(3) There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space

complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

(7) Defendant fails to maintain the accessible features of the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**BUBBA GUMP SHRIMP CO.**

KKK. Defendants provide a hostess counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities:

(1) There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the sales/service counter which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

(2) The hostess counter exceeds the maximum allowed height of 36 inches above the finished floor which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

(3) The facility fails to maintain the accessible features at the hostess counter that are required to be readily accessible to and usable by individuals with disabilities which denies individuals with

disabilities the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is the same experience offered to able bodied individuals;

**OOO.** Defendants provide a sales and service counter in the Bubba Gump Shrimp Co. retail store for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2) There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

**(3)** There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA

Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

(6) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

(7) Defendants fail to maintain the accessible features of the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

PPP.   Defendants provide an accessible route to and throughout the shopping retail aisles for able-bodied individuals but fails to provide an ADA accessible route to and throughout the retail shopping aisle for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at Defendants' retail store;

(1) Defendants fail to maintain the retail store aisles accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining at least one accessible route that connects the facility entrance with

all accessible spaces and elements within the facility which are otherwise connected by a circulation path;

**(2)** Defendants fail to maintain the retail store aisles accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the self-service shelves on an accessible route;

**(3)** Defendants fail to maintain the retail store aisles accessible route in operable condition by conforming with the ADA Standards for Accessible Design so that the required clear walking surfaces and its associated elements are not rendered unusable by the disabled as a result of the display tables, clothing racks, and among other items obstructing the clear floor walking surface;

**(4)** Defendants fail to maintain the retail store aisles accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the accessible routes clear width at turns and/or passing spaces which has the discriminatory effects of rendering the shopping aisles, including its goods, as unusable by the disabled;

**(5)** Defendants' use of their merchandise display racks is positioned in a way that has a discriminatory effect in practice of prohibiting individuals with disabilities from being afforded the opportunity to

maneuver to and throughout the retail shopping aisles and turning to maneuver throughout the adjacent shopping aisle;

**(6)** Defendants fail to have or otherwise fails to enforce their policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

**(7)** Defendants have ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

**QQQ.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to

be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**RRR.**   Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes standard dining surfaces and standard elevated booth dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

(2) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3)  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is

maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

SSS.     Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the outdoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) There is not at least 5% of the seating spaces and standing spaces at the outdoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to

be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the outdoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the outdoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the outdoor bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**TTT.**    Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the outdoor seating area which includes standard dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

(2) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for

Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained  in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

## STARBUCKS

**YYY.** Defendants provide a sales and service counter in Starbucks for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily

accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

**(2)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

**(3)** There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

(4) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

(5) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

(6) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

(7) Defendants fail to maintain the accessible features of the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**ZZZ.**    Defendants provide a self-service counter in Starbucks for able-bodied individuals to independently retrieve self-service condiments and other items and services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) There is not at least one of each type of self-service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2) There is not at least one of each type of self-service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface;

(3) There is not  at least one of each type of self-service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground

space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of self-service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of self-service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of self-service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and

independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendants fail to maintain the accessible features of the self-service counter that are required to be readily accessible to and usable by individuals with disabilities;

**AAAA.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the seating area for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the seating area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

(2) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the seating area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the seating area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the seating area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

30. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

31. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

32. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

**COUNT TWO**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

33. Plaintiffs incorporate by reference and re-allege all the paragraphs above.

34. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

35. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal

benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

36. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

37. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any

person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

38.   By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

39.   For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit explained this

clear statutory mandate in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002):

> "*A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendant entity's goods, services and privileges.*"

## Defendants' Failed Practices and Lack of Policies Are Discriminatory

40.   Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

41.   Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

42.   As detailed below, Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to

individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiffs differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiffs. Defendants will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

43. Defendants either have no policies, practices, and procedures to remove architectural barriers or else they do not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

44. Defendants' use of their facilities, and their practices at the facilities, literally creates barriers and in so doing denies the Plaintiffs the full and equal enjoyment of the facilities. Those practices include:

a) Defendants fail to provide ADA accessible parking with connecting accessible routes to the establishment from their parking structure, which means that Plaintiffs are forced to depend on assistance from a third party to get into Golden Nugget, whereas non-disabled conveniently access the establishment from the parking structures;

b) Defendants make their hotel check in counters inaccessible for use by individuals with disabilities by failing to provide either a parallel or a

forward approach to the counters with the required clear counter surface, or appropriately staff the allegedly accessible check in counter, which means Plaintiffs cannot fully and equally use the counters to check into their hotel rooms/suites at Golden Nugget in the same way the non-disabled do, because the non-disabled have a plethora of counters that readily available to use to check-in to their rooms, check-out, and every other service Golden Nugget provides at the registration counters;

c)     Defendants make their players club cards and its associated benefits inaccessible for use by the disabled, which means that that Plaintiffs are required to seek assistance to use the players card at the casino games or otherwise be outright excluded from the benefits of the players club, whereas non-disabled individuals do not need to seek assistance to use the players club cards at the games so that they enjoy earning rewards that convert to slot credits, earning benefits at the players tables, earning valuable rewards dollars that can be redeemed at the resort, receive monthly deals for the Golden Nugget in the mail, and among other benefits.


d)     Defendants fail to provide an accessible players club counter to the disabled which means Plaintiffs cannot fully and equally use the players club counter to discuss member services, benefits, and other associated elements of the players club in the same way the non-disabled do,

because the non-disabled have counters they can use independently;

**e)**     Defendants makes sales/service counters throughout their establishment inaccessible for use by the handicapped by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business throughout Golden Nugget in the same way the non-disabled do, because the non-disabled have counters they can use independently to check-in to their rooms, check-out, and order food and drink items;

**f)**     Defendants fail to provide an accessible route that connects the resort to all of the spaces and elements of the outdoor pool area that are required to be readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of the outdoor pool area, and are therefore prohibited from enjoying the same benefits and experiences in the same way as the non-disabled get to enjoy;

**g)**     Defendants' seating arrangement and their failure to provide accessible lounge seating at the pool are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are outright excluded from the "opportunity" to sit and lounge by the pool to enjoy the view or soak up the sun or any other relaxing benefit

from anywhere else that able-bodied individuals are able to sit and enjoy the lounge seating by the pool;

h)   Defendants fail to provide an accessible route that connects the entrance of the gift shop to all of the spaces, elements, and retail aisles that are required to be readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of the gift shop, and are therefore prohibited from enjoying the same benefits and experiences in the same way as the non-disabled get to enjoy;

i)   Defendants make sales/service counters inside the gift shop inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

j)   Defendants make sales/service counters inside The Chocolate Box inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

k) Defendants fail to provide an accessible route that connects the entrance of Style & Trend to all of the spaces, elements, and retail aisles that are required to be readily accessible to and usable by disabled individuals, so that Plaintiffs are entirely prohibited from accessing each and every space and element of Style & Trend, and are therefore prohibited from enjoying the same benefits and experiences in the same way as the non-disabled get to enjoy;

l) Defendants make sales/service counters inside Style & Trend inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

m) Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals inside the Style & Trend store, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do without requiring assistance;

n) Point of sale machines at the check-out counters throughout the establishment are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their

purchases, though Plaintiffs cannot;

o)    Defendants fail to provide maneuvering clearance and clear floor space in almost every way possible so that Plaintiffs cannot travel and move throughout the establishment on the same paths of travel that the non-disabled people use;

p)    Defendants make their toilet facilities throughout the establishment inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiffs are afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

q)    Defendants make their pool area inaccessible for use by the disabled by failing to maintain any ADA accessible features whatsoever, so that Plaintiffs are completely excluded from being able to lounge in the chairs, swim in the pool, among other services in the pool area, whereas non-disabled individuals are able to independently enjoy and use the pool area to swim, lounge in the chairs, and use the cabanas;

r)    Defendants make Morton's The Steakhouse and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy an upscale dinner and atmosphere, or any other benefits that able-bodied individuals receive at Morton's

The Steakhouse;

s)   Defendants' seating arrangements in the Morton's The Steakhouse dining area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

t)   Defendants make Michael Patrick's and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy their drinks, approach the bar counter to order a drink, sit at the bar to socialize, or any other benefits that able-bodied individuals receive at Michael Patrick's;

u)   Defendants' seating arrangements in the Michael Patrick's dining area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

v)     Defendants' seating arrangement and their failure to provide accessible lounge seating in Michael Patrick's is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the lounge seating in Michael Patrick's;

w)    Defendants make their casino games on the bar counter at Michael Patrick's inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the bar counter on which the games are located, whereas, non-disabled individuals are able to independently use the casino games on the bar counter in Michael Patrick's;

x)     Defendants make Lillie's Asian Café and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy their meals, or any other benefits that able-bodied individuals receive at Lillie's Asian Café;

y)     Defendants' seating arrangements in Lillie's Asian Café is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience

that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

**z)**   Defendants make The Buffet and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy their meals, or any other benefits that able-bodied individuals receive at The Buffet;

**aa)**   Defendants' seating arrangements in The Buffet is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

**bb)** Defendants make Bubba Gump Shrimp Co. and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to sit at the various types of seating and enjoy their meals, or any other benefits that able-bodied individuals receive at The Buffet;

cc)    Defendants' seating arrangements in Bubba Gump Shrimp Co. is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

dd)    Defendants make the sales/service counter inside the gift shop in Bubba Gump Shrimp Co. inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

ee)    Defendants make Bar46 and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to approach the bar counter to order a drink, or sit at the bar to socialize, or any other benefits that able-bodied individuals receive at Bar46;

ff)    Defendants' seating arrangement and its failure to provide accessible lounge seating in the Bar46 area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an

experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Bar46 area;

gg)   Defendants make their casino games on the bar counter at Bar46 inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the bar counter on which the games are located, whereas, non-disabled individuals are able to independently use the casino games on the bar counter in Bar46;

hh)  Defendants make Rush Lounge and its associated benefits inaccessible for use by the disabled, which means that Plaintiffs are entirely prohibited from being afforded the opportunity to approach the bar counter to order a drink, or sit at the bar to socialize, or any other benefits that able-bodied individuals receive at Rush Lounge;

ii)   Defendants' seating arrangement and its failure to provide accessible lounge seating in the Rush Lounge area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit

anywhere else that able-bodied individuals are able to sit and enjoy the Rush Lounge area;

**jj)**    Defendants make their casino games on the bar counter at Rush Lounge inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the bar counter on which the games are located, whereas, non-disabled individuals are able to independently use the casino games on the bar counter in Rush Lounge;

**kk)**    Defendants' seating arrangements in The Buffet dining area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

**ll)**    Defendants make the self-service counters throughout The Buffet inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, and failing to arrange the items on the self-service counters in a way that the disabled can independently access the items, which means Plaintiffs cannot fully and equally use the self-service counters to select their food or put toppings or

condiments on their food choices in the same way the non-disabled do, because the non-disabled have self-service counters they can use independently;

mm)  Defendants make hostess counters throughout their establishment inaccessible for use by the handicapped by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the hostess counters throughout Golden Nugget to interact with the hostesses to be seated at tables and/or put their names on waiting lists for tables in the same way the non-disabled do, because the non-disabled have hostess counters they can use independently to put their names on waiting lists for tables and/or interact with hostesses to be seated at tables;

nn)  Defendants fail to provide a place for the disabled both to sit and eat like able-bodied people can;

oo)  Defendants make their casino games inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the games, whereas, non-disabled individuals are able to independently use all the casino games;

pp)  Defendants make their High Limits gaming area inaccessible for use by the disabled by failing to maintain any ADA accessible features

whatsoever so that Plaintiffs are excluded from being able to approach the games, whereas, non-disabled individuals are able to independently use all the High Limits area casino games;

qq)   Defendants' seating arrangement and their failure to provide accessible lounge seating in the High Limits area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the High Limits area;

rr)   Defendants fail to provide accessible cashier counters to the disabled which means Plaintiffs cannot fully and equally use the counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

ss)   Defendants fail to provide an accessible fitness center to disabled individuals, which means Plaintiffs cannot fully and equally use the fitness center in the same way the non-disabled do, because the non-disabled have a fitness center they can use independently;

tt)   Defendants fail to provide an accessible spa and salon to disabled individuals, which means Plaintiffs cannot fully and equally use the

fitness center in the same way the non-disabled do, because the non-disabled have a fitness center they can use independently;

uu) Defendants make sales/service counters inside the spa and salon inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface at the required accessible height, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

vv) Defendants' seating arrangement and their failure to provide accessible lounge seating in the spa and salon area is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the spa and salon area;

ww) Defendants fail to provide accessible guest room elevators to disabled individuals by requiring guests to use the room key card to activate the elevator, which means Plaintiffs cannot independently use the elevator to ride up to their rooms, and therefore cannot fully and equally use the guest room elevators in the same way the non-disabled do;

**xx)** Defendants fail to provide hotel suites to disabled individuals, which means Plaintiffs are forced to be segregated to inferior services and rooms, whereas non-disabled are able to reserve the hotel suites and enjoy the luxury features of the suites;

**yy)** Defendants fail to provide an accessible reservation system for disabled individuals, which means that Plaintiffs are segregated, separated and otherwise screened out from being able to reserve a hotel suite, whereas non-disabled individuals are able to make reservations;

**zz)** Defendants fail to provide a description of the accessible features of the resort for disabled individuals, which means Plaintiffs cannot fully and equally evaluate the features of the Golden Nugget in the same way the non-disabled do, because the non-disabled are able to independently use the website to evaluate the features of the hotel;

**aaa)** Defendants fail to provide a description of the accessible features of the resort hotel suites for disabled individuals;

**bbb)** Defendants fail to provide a mobile web platform that enables voice recognition software and other assistive touch technologies for disabled individuals to receive the same services through the mobile app as non-disabled individuals do;

**ccc)** Defendants fail to provide a policy to guarantee rooms that disabled individuals reserve;

**ddd)** Defendants' policies, practices, and procedures are conducted without

regard to disabled individuals;

eee)   Defendants' practice is to only make modifications to practices and policies and repairs to barriers upon the demand of the disabled.

45.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

46.   As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendants' existing, practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

47.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or else they failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at Defendants' casino and resort as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Golden Nugget.

48.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and

maintain a policy of complying with ADA building design standards and regulations.

49.  To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

50.  A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendants both creates and adopts a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that physical and non-physical barriers identified above are permanently removed from Defendants' casino and resort consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Golden Nugget; (3) Golden Nugget will remedy its practice of making ADA Title III remediations only upon demand by the disabled (4) Golden Nugget will remedy its practice of screening out disabled individuals through the use of its reservation system; (5) Golden Nugget will remedy its practice of screening out disabled individuals through the use of its phone reservation system; (6) Golden Nugget will remedy its practice of not guaranteeing Plaintiffs and others similar situated the accessible room they requested;

51.  As pled above, Riverboat Corporation of Mississippi, "owns" the real property

and improvements located at 151 Beach Blvd, Biloxi, MS 39530. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

52.    As pled above, Golden Nugget Biloxi, Inc., "operates" Golden Nugget Biloxi Hotel & Casino located at 151 Beach Blvd, Biloxi, MS 39530. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

53.    As pled above, Fertitta Entertainment, Inc., "owns" the public internet website www.goldenugget.com and the Golden Nugget mobile application and its goods and services offered on the app, and "operates" the world-wide websites services and mobile application services that are available to the public at the Golden Nugget. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web-based services, as alleged above.

54.    The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

55.    By this Complaint, Plaintiffs provide sufficient notice of their demands for an alteration in Defendants' policies, practices, and procedures.

56.    Plaintiffs have been obligated to retain the undersigned counsel for the filing

and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

57.     Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
*Denial of Full and Equal Enjoyment*

58.     Plaintiffs incorporate by reference and re-allege all the paragraphs above.

59.     42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

60.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

61.     Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to*

*assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*"; 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

62.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

63.   The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

64.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

65.    Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

66.    To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public

accommodation.").

67.    For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

68.    The keystone for this analysis is Defendants *must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v.  Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

69.    Plaintiffs Patrick Dunn and Hope Elly were denied full and equal access to Golden Nugget. Plaintiffs specifically and definitely want to return to the Defendants' hotel and casino to enjoy the Golden Nugget getaway that is attainable for just about everyone, whether its floating atop a daybed at H20 pool, watching a stack of chips grow at a blackjack table, taking a sip of a Daiquiri at the swim-up bar, experiencing the best meal of your life in one Golden Nugget's signature restaurants, or ordering room service and enjoying a meal in a room that inspires a relaxed state of being, Golden Nugget offers resort-style luxuries for everyday escapes, making everyday life extraordinary. More specifically, Plaintiffs want to be afforded the same level of service that is

offered to non-disabled individuals and which Defendants have failed to provide to Plaintiffs as follows: Defendants failed to provide an accessible parking structure and accessible route into Golden Nugget for disabled individuals, which means Plaintiffs cannot park, cannot independently get out of their cars and onto their wheelchairs, cannot independently travel from the parking garage into Golden Nugget, cannot determine if there is a usable parking space, and must determine by trial and error how they are to park and move into Golden Nugget; Defendants failed to provide Plaintiffs and other disabled individuals the required maneuvering clearance and clear floor space in almost every way possible, which means that the disabled cannot travel and move throughout Golden Nugget on the same paths of travel that non-disabled individuals use to travel throughout Golden Nugget; Defendants failed to provide Plaintiffs the same opportunity to participate in and enjoy the benefits of the players club, including but not limited to earning rewards that convert to slot credits, earning benefits at the players tables, earning valuable "comp" dollars that can be redeemed at the restaurants, receiving monthly deals for Golden Nugget in the mail, among other benefits of the players club; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the players club counter, while the non-disabled can fully and independently access the players club counter and the plethora of services provided at the counter; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when at Golden Nugget; Defendants failed to provide the same experience by making

it nearly impossible for the disabled to access the check-in counter, while the non-disabled can independently access the check-in counter and services provided at the counter to check-in; Defendants failed to provide the same experience to Plaintiffs by making it nearly impossible for the disabled to access the seating throughout Golden Nugget, while the non-disabled can independently access and use the seating throughout Golden Nugget to their leisure and convenience; Defendants failed to provide the same experience to Plaintiffs by making it nearly impossible for the disabled to access the lounge seating throughout Golden Nugget, while the non-disabled can fully and independently access and use the lounge seating throughout Golden Nugget to their leisure and convenience; Defendants failed to provide an accessible route that connects the resort to all of the spaces and accessible elements throughout the establishment for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get throughout establishment independently, if they can make it at all; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at the gift shop; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in the gift shop, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible route that connects the entrance of the gift shop to all of the spaces, elements, and retail aisles in the gift shop for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout the gift shop

independently, if they can make it at all; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at The Chocolate Box; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in The Chocolate Box, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible route that connects the entrance of The Chocolate Box to all of the spaces, elements, and retail aisles in the gift shop for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout the gift shop independently, if they can make it at all; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at Style & Trend; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters in Style & Trend, while the non-disabled can independently access the counters and services provided at the counters; Defendants failed to provide an accessible route that connects the entrance of Style & Trend to all of the spaces, elements, and retail aisles in the store for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout Style & Trend independently, if they can make it at all; Defendants failed to provide an accessible dressing room in Style & Trend that is readily accessible to and usable by disabled individuals; Defendants failed to provide Plaintiffs that same shopping experience that non-disabled individuals have when shopping at stores throughout Golden Nugget;

Defendants failed to provide Plaintiffs that same experience by failing to provide an accessible fitness center for the disabled, while the non-disabled can fully access the fitness center; Defendants failed to provide Plaintiffs that same experience by failing to provide an accessible spa and salon for the disabled, while the non-disabled can fully access the fitness center; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in the spa and salon, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by failing to provide lounge seating in the spa and salon for the disabled to sit and relax while waiting on their spa experience, while the non-disabled can fully use the lounge seating; Defendants failed to provide accessible restrooms throughout Golden Nugget for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restrooms, clean up after using the restrooms, move throughout the restrooms, and use the other elements of the restrooms; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters throughout the establishment, though the able-bodied can fully use and enjoy all the sales/service counters throughout Golden Nugget; Defendants failed to provide Plaintiffs and other disabled individuals the same opportunity to use point of sale machines at sales/service counters throughout Golden Nugget to pay for their purchases; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have

when dining at Bubba Gump Shrimp Co. by failing to provide access to the dining tables and seating in Bubba Gump Shrimp Co.; Defendants failed to provide an accessible route that connects the entrance of Bubba Gump Shrimp Co. to all of the spaces, elements, and retail aisles in the Bubba Gump Shrimp Co. retail store for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get into and throughout the Bubba Gump Shrimp Co. retail store independently, if they can make it at all; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at the Bubba Gump Shrimp Co. retail store; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters in the Bubba Gump Shrimp Co. retail store, while the non-disabled can independently access the counters and services provided at the counters; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when sitting and enjoying their food and drinks in Lillie's Asian Café by failing to provide access to the dining tables and seating in Lillie's Asian Café; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when eating and ordering food and beverages at restaurants and bars throughout Golden Nugget; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at the restaurants and bars throughout Golden Nugget by failing to provide access to dining tables and seating, which the non-disabled are able to access freely; Defendants failed to provide Plaintiffs that same experience when eating at The

Buffet by making it nearly impossible for the disabled to access the food selection counters, although the non-disabled can access the food selection counters independently; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at The Buffet by failing to provide access to the dining tables and seating in The Buffet; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at Morton's The Steakhouse by failing to provide access to the dining tables and seating in Morton's The Steakhouse; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at Michael Patrick's by failing to provide access to the dining tables and seating in Michael Patrick's; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when socializing and enjoying drinks and entertainment at bars throughout Golden Nugget; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when socializing and enjoying drinks and entertainment at bars throughout Golden Nugget by failing to provide access to tables and seating, which the non-disabled are able to access freely; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when enjoying drinks at Bar46 by failing to provide access to the bar and seating in Bar46; Defendants failed to provide the disabled lounge seating and tables in Bar46, which the able-bodied are provided and able to fully access and enjoy; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when socializing and enjoying drinks and

entertainment at Rush Lounge by failing to provide access to the bar and seating in Rush Lounge; Defendants failed to provide the same experience to Plaintiffs by failing to provide accessible lounge seating by the pool, which means that Plaintiffs and other disabled individuals are denied the opportunity to sit outside by the pool and relax, lounge and enjoy the outdoors in the same way the non-disabled do; Defendants failed to provide Plaintiffs that same experience by designing, positioning and orienting their seating arrangements in the lounge seating area by the pool in a way that excludes and segregates disabled individuals of the same experience that non-disabled individuals have when lounging in the lounge seating area by the pool because unlike the non-disabled, disabled individuals are outright excluded from the opportunity to sit outside by the pool and relax, lounge and enjoy the outdoors from the same areas and in the same ways that non-disabled individuals are able to sit and enjoy it; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when at the pool area; Defendants failed to provide an accessible H2O Pool & Bar to disabled individuals, which means that unlike the non-disabled, Plaintiffs and other disabled individuals are prohibited from sitting at the bar to socialize, enjoy the shade, order drinks and food, or enjoy any other benefits that the non-disabled are able to enjoy at the bar; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when enjoying the H2O Pool & Bar by failing to provide access to the tables and seating at the H2O Pool & Bar; Defendants failed to provide an accessible route that connects the resort to all of the spaces and elements of the

pool area for disabled individuals, which means that Plaintiffs and other disabled individuals are entirely prohibited from accessing each and every space and element of the pool area, and are therefore prohibited from enjoying the pool area in the same way that the non-disabled area able to enjoy it; Defendants failed to provide Plaintiffs and other disabled individuals the same experience that the non-disabled have when at the pool area by failing to maintain any ADA accessible features whatsoever, which means that unlike the non-disabled, the disabled are completely excluded from the opportunity to lounge in the pool chairs, swim in the pool, and use the cabanas among other services at the pool, all of which the non-disabled have the opportunity to independently use and enjoy; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when playing games in the casino by failing to provide the required clear floor or ground space; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when at the cashier counters in the casino by failing to provide an accessible cashier counter to the disabled, which means that Plaintiffs and other disabled individuals are denied the opportunity to independently use the cashier counters to transact business in the same way that the non-disabled do; Defendants failed to provide Plaintiffs that same experience that non-disabled individuals have when playing games in and enjoying all of the elements of the High Limits casino area by failing to provide the required clear floor or ground space at the games, failing to provide an accessible bar area, and failing to provide accessible lounge seating in the High Limits area for disabled

individuals; Defendants failed to maintain the accessible signage throughout Golden Nugget so that the disabled, unlike the non-disabled, do not even know what route and what facilities are usable by individuals with disabilities; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide Plaintiffs that same online experience non-disabled individuals have which includes making reservations on the online website; Defendants failed to provide Plaintiffs the same experience that non-disabled individuals have when staying at Golden Nugget by failing to provide the disabled the opportunity to choose and stay in accessible hotel suites that are the same elegantly appointed luxurious suites offered to the non-disabled,  including but not limited to Terrace King rooms, Terrace Queen rooms, Junior King Suites, Junior Queen Suites, Spa Suites, and all of the hotel suites; Defendants failed to provide Plaintiffs the same experience by failing to provide an accessible reservation system through the Golden Nugget website for disabled individuals, which means the disabled are segregated, separated, and otherwise screened out from being able to reserve a hotel room at Golden Nugget, while the non-disabled are able to fully and equally make hotel reservations at Golden Nugget; Defendants failed to provide Plaintiffs the same experience by failing to provide a description of the accessible features of the resort on their website, which means Plaintiffs cannot fully and equally

evaluate the features of Golden Nugget to determine what features, if any, are accessible to and usable by disabled individuals, while the non-disabled are able to independently use the website to evaluate all of the non-accessible features of Golden Nugget provided to them; Defendants failed to provide Plaintiffs the same experience by failing to provide an accessible reservation system through their mobile application for disabled individuals, which means the disabled are excluded from being able to reserve a hotel room at Golden Nugget, check-in, make meal reservations, among many other benefits through Defendants' mobile application services, while the non-disabled are able to fully and equally make hotel reservations at Golden Nugget through the mobile application; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from using Defendants' mobile application to "skip the Front Desk line" and check-in, while the non-disabled are able to independently "skip the Front Desk line" and check in through Defendants' mobile application; Defendants failed to provide Plaintiffs the same experience by failing to provide a mobile application service that allows the disabled to view all of the accessibility features at Golden Nugget to determine what features, if any, are accessible to and usable by disabled individuals, while the non-disabled are able to independently use the mobile application to view and evaluate all of the non-accessible features of Golden Nugget provided to them; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from making table reservations at all of Golden Nugget's restaurants through the mobile application, while the non-disabled are able to independently use Defendants'

mobile application to make table reservations at any of the restaurants throughout Golden Nugget; Defendants failed to provide Plaintiffs the same experience by excluding the disabled from viewing the up and coming live entertainment at Golden Nugget through the mobile application, while the non-disabled are able to independently use Defendants' mobile application to view all the up and coming live entertainment at Golden Nugget; Defendant failed to provide Plaintiffs the same experience by excluding the disabled from being able to use Defendants' mobile application to view, access and receive the benefits of the players club program, while the non-disabled are able to independently use Defendants' mobile application to view, access and receive all of the benefits of the players club program; Defendants failed to provide Plaintiffs the same experience by failing to modify its mobile application service to allow assistive technology for the disabled, which includes but is not limited to voice recognition, alternative input methods, and assistive touch functions, among other accessibility methods that Plaintiffs and other disabled individuals require in order to use mobile applications and their associated features in the same, equal way that non-disabled individuals are able to use them; Defendants failed to maintain the accessible features of Golden Nugget that are required to be readily accessible to and usable by Plaintiffs and others similarly situated, such as maintaining the parking structure, restrooms and all of the restaurants, bars and their associated services and elements; and all the foregoing failures by Defendants inhibited Plaintiffs from having the same experience that non-disabled individuals have when at Golden Nugget.

70.   In its Preamble to the Title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

71.   The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)) (ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status ofsecond-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

72.   Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA because Defendant has segregated and separated the disabled from the non- disabled individuals. "*The goal is to eradicate*

*the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473. The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*)

73.   Defendants discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Golden Nugget.

74.   Defendants' conduct and Defendants' unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiffs and others similarly situated unequally.

75.   Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

**76.**     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

**77.**     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facility for ADA compliance)*

**78.**     Plaintiffs incorporate by reference and re-allege all the paragraphs above.

**79.**     42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

**80.**     Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs

should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

81.   To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id*.

82.   As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible*. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

83.   To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the

Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

84.   Defendant, Riverboat Corporation of Mississippi, "owns" the Golden Nugget establishment and at all relevant times was and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

85.   Defendant, Golden Nugget Biloxi, Inc., is the "operator" of the Golden Nugget Biloxi Hotel and Casino and at all relevant times was and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

86.   Defendants were and are required to design and construct the Edgewater Mall establishment to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct *their establishment to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct its establishment in compliance with the ADA during planned alterations as described throughout this Complaint.

87.   According to Defendants' own publicly available information, Defendants

chose to design their establishment in a way that is not ADA Title III compliant whatsoever. Defendants literally strategically design, construct and maintain its establishment without any regard to the disabled. Defendants' systematic design of their establishment fails to afford disabled individuals the same experience that is afforded to individuals without disabilities.

88. To date, the Defendants' discriminating actions continue.

89. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

90. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**COUNT FIVE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(a) and 28 C.F.R. § 36.302 (e)(1)(i)-(ii)**
*(Failure of website to show accessible features of the Golden Nugget)*

91. Plaintiffs incorporate by reference and re-allege all the paragraphs above.

92. The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

93. Congress enacted the ADA in light of its findings that "individuals with

disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

94.    However, the Internet of today did not exist when Congress originally enacted the ADA and, accordingly, neither the ADA nor the regulations the Department of Justice promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix*, 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994)). The "broad mandate" of the ADA and its "comprehensive character" are resilient enough to keep pace with the fact that the virtual reality of the Internet is almost as important now as physical reality alone was when the statute was signed into law. The meteoric rise of virtual reality through the Internet and its impact on communal and commercial affairs could not have been anticipated by Congress

does not mean the law's application to the Internet and website is ambiguous; "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth". *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017). Today, internet technology enables individuals to participate actively in their community and engage in commerce from the comfort and convenience of their home. It would indeed be a cruel irony to adopt the interpretation of the ADA espoused by *Blick*, which would render the legislation intended to emancipate the disabled from the bonds of isolation and segregation obsolete when its objective is increasingly within reach. Plaintiff has stated a claim under the ADA. *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

95.     Congress expressly stated when enacting the ADA that: "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times*". In light of this, the United States Department of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations.  75 Fed Reg. 43460.  The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance.  *Id.* at 43464.  Through the

ANPRM, the Department sought to explore what regulatory provisions they could propose *to make clear to entities covered by the ADA of their obligations to make their websites accessible*.

96. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

97. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

98. For that reason, the Act applies not only to barriers to physical access to places

of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182, 28 C.F.R. 36.302(e)(1)(i) and (ii). Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held persuasively in _Rendon v. Valleycrest Prod., Ltd._ 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendant entity's goods, services and privileges."*

99.   The Golden Nugget website and online reservation system did not allow plaintiffs to use the website and online reservation system in the same manner as individuals with disabilities, because the website and online reservation system failed to show any of the accessible features of Golden Nugget, which includes but is not limited to: Defendants failing to identify and describe the accessible features of (1) the Casino, (2) the Resort's common areas and its associated amenities; (3) Michael Patrick's; (4) The Buffet; (5) Lillie's Asian Café; (6) Morton's The Steakhouse; (7) Bubba Gump Shrimp Co.; (8) Bar46; (9) Rush Lounge; (10) High Limits; (11) Spa and Salon; (12) the fitness center;

(13) H2O Pool & Bar; (14) Essentials gift shop; (15) Style & Trend; (16) The Chocolate Box; and (17) the accessible features of the guest rooms and suites themselves, much less provide them options for accessible features. Moreover, Defendants provides a plethora of services and associated benefits, including but not limited to: hotel stay packages, virtual tours of its shopping and dining variety, a variety of top-of-the-line dining options, and their players club and its associated benefits and services to able-bodied individuals, but fail to provide those same services of the accessible features of the Golden Nugget to disabled individuals which relegates and otherwise segregates disabled individuals to inferior benefits and services of the Golden Nugget.

100. The Department of Justice has promulgated regulations that specifically prohibit Defendants' conduct in this case as to the Defendants' places of lodging. 28 C.F.R. 36.302(e) specifically provides:

> "(1) *Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –*
>
> > (i) *Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and <u>in the same manner as</u> individuals who do not need accessible rooms;*
> >
> > (ii) *Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;"*
> > (emphasis added).

101.   Defendants' website and reservation system did not allow Plaintiffs to use the system in the same manner as individuals without disabilities, because (1) the website failed to show or otherwise inform of the accessibility features at the hotel; (2) it did not offer the same type of guest rooms to the disabled as to individuals without disabilities; and (3) it failed to allow Plaintiffs and others similarly situated, to make reservations in the same manner as other individuals who do not need accessibility features. Specifically, through the reservation system Defendants only offers the disabled hotel rooms that are allegedly accessible that are standard guest rooms, without any of the choices for upgraded amenities that are offered in the non-accessible rooms. The choices for upgraded amenities include but are not limited to the floor level, rooms that are adjoining, the different types of suites and rooms, a view of the water, a view of the city, room size, the type of amenities offered in the room, among many other features non-disabled guests are offered, including the floor level and suites.

102.   The Defendants' reservation system did not allow Plaintiffs to make reservations in the same manner as the non-disabled because it failed to provide accessible opportunities to make reservations for the elegantly appointed rooms and luxurious suites that Golden Nugget offers such as 1) a Terrace King Room; (2) a Terrace Queen Room; (3) a Junior King Suite; (4) a Junior Queen Suite; and (5) a Spa Suite.

103.   To date, the Defendants' discriminating actions continue.

104. As pled above, Riverboat Corporation of Mississippi, "owns" the real property and improvements located at 151 Beach Blvd, Biloxi, MS 39530. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

105. As pled above, Golden Nugget Biloxi, Inc., "operates" Golden Nugget Biloxi Hotel & Casino located at 151 Beach Blvd, Biloxi, MS 39530. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

106. As pled above, Fertitta Entertainment, Inc., "owns" the public internet website www.goldennugget.com and the Golden Nugget mobile application and its goods and services offered on the app, and "operates" the world-wide websites services and mobile application services that are available to the public at the Golden Nugget. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web-based services, as alleged above.

107. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

108. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**COUNT SIX**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(b)(2)(A)(i)**
*(Use of technology that tends to screen out individuals with disabilities)*

109.    Plaintiffs incorporate by reference and re-allege all of the paragraphs above.

110.    The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

111.    Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

112.    However, the Internet today did not exist when Congress originally enacted the ADA and, accordingly, neither the ADA nor the regulations the Department of Justice promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate*

*reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix,* 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994)).

113.   Congress expressly stated when enacting the ADA that: "*…the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times*". In light of this, the United States Department of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations.  75 Fed Reg. 43460.  The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance.  *Id.* at 43464.  Through the ANPRM, the Department sought to explore what regulatory provisions they could propose *to make clear to entities covered by the ADA of their obligations to make their websites accessible.*

114.   To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No

individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

115.    By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

116.    For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from

services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon*

*v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> "*A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendant entity's goods, services and privileges.*

117.    Pursuant to 42 U.S.C. § 12182(b)(2)(A)(i) discrimination includes:

> *The imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.*

118.    Pursuant to 42 U.S.C. § 12182(b)(2)(A)(iii) discrimination includes:

> *A failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.*

119.    The plain language of these statutory provisions applies to discrimination in

offering the goods and services ''of'' a place of public accommodation or the

services, programs, and activities ''of'' a public entity, rather than being limited to those goods and services provided ''at'' or ''in'' a place of public accommodation or facility of a public entity.

120. A place of public accommodation also may not refuse to make reasonable modifications to a policy or practice that has the consequence of denying such individuals access to its services. Nor can a public accommodation refuse to make modifications to a policy or practice that tends to deny individuals with disabilities access to the goods and services of the public accommodation.

121. Defendants utilize the Golden Nugget online website and reservation system to screen out disabled individuals, so that they are not informed of the accessibility features at the hotel as well as not offered the same type of guest rooms as other individuals without disabilities. The screening out process specifically involves only offering hotel rooms that are allegedly accessible that are standard guests rooms without any upgraded amenities that are offered in the non-accessible rooms. The upgraded amenities include but are not limited to the floor level, rooms that are adjoining, the different types of suites and rooms, a view of the water, view of the city, room size, the type of amenities offered in the room, among many other features non-disabled guests are offered, including the floor level and suites.

122. The Golden Nugget online website served to screen Plaintiffs in that they were unable to determine any of the accessible features of Golden Nugget, which includes but is not limited to: Defendants failing to identify and describe the accessible features of (1) the Casino, (2) the Resort's common areas and its

associated amenities; (3) Michael Patrick's; (4) The Buffet; (5) Lillie's Asian Café; (6) Morton's The Steakhouse; (7) Bubba Gump Shrimp Co.; (8) Bar46; (9) Rush Lounge; (10) High Limits; (11) Spa and Salon; (12) the fitness center; (13) H2O Pool & Bar; (14) Essentials gift shop; (15) Style & Trend; (16) The Chocolate Box; and (17) the accessible features of the guest rooms and suites themselves, much less provide them options for accessible features. Moreover, Defendants provide a virtual tour of the features of Golden Nugget including but not limited to Golden Nugget's shopping variety and variety of restaurants to able-bodied individuals but fails to make a virtual tour available of the accessible features of Golden Nugget to disabled individuals.

123.   The reservation system served to screen Plaintiffs to only allow them to book non-accessible guest rooms on the website, or alternatively, require Plaintiffs to make a request for accessible rooms after they made reservations for a non-accessible room. The Defendants' reservation system did not offer Plaintiffs any of the types of elegantly appointed rooms and/or luxurious suites that Golden Nugget offers such as 1) a Terrace King Room; (2) a Terrace Queen Room; (3) a Junior King Suite; (4) a Junior Queen Suite; and (5) a Spa Suite.

124.   Moreover, Defendants' online website, their reservation system, and further exemplified by their non-compliant facility screened out Plaintiffs by failing to ensure that accessible guest rooms are held for Plaintiffs and further, failing to make reasonable modifications in their policies, practices, or procedures, so that Plaintiffs are not excluded, denied services, segregated or otherwise treated differently than other individuals without disabilities.

125.   The ADA and the Title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication between the two, and in this action, Defendants have chosen to use an online reservation system by which they communicate with able-bodied individuals to complete commercial transactions. Whereas, Defendants have chosen to use their reservation system and online website as a means by which to not communicate and transact business with disabled individuals which is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. *See* 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]*" and that technological advances "*may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities.*" *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

126.   These are precisely the sorts of claims Title III was intended to cover. The process for selecting an ADA accessible hotel room is no different than the implementation of eligibility criteria in other contexts that are clearly covered by the Act. For example, there is no question that the administration of

admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendants screened guests as they entered the Hotel Lobby, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater.*"). That disabled individuals are screened out by an automated hotel reservation system, rather than by an admission policy administered at the studio door is of no consequence under the statute.

127.   Defendants' failure to modify this practice necessary to ensure Plaintiffs the full and equal enjoyment of Golden Nugget has resulted in the complete exclusion from making reservations online and in the same manner as other individuals who do not have disabilities.  See § 12182(b)(2)(A)(ii)-(iii).

128.   The screening process violates the Americans with Disabilities Act by directly and intentionally screening out disabled individuals for the purpose of preventing the disabled from being afforded the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, at Golden Nugget. 42 U.S.C. § 12182(b)(2)(A)(i).

129.   The screening of individuals with disabilities is not necessary to provide accommodations because no accommodations are provided.

**130.** To date, the Defendants' discriminating actions continue.

**131.** As pled above, Riverboat Corporation of Mississippi, "owns" the real property and improvements located at 151 Beach Blvd, Biloxi, MS 39530. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

**132.** As pled above, Golden Nugget Biloxi, Inc., "operates" Golden Nugget Biloxi Hotel & Casino located at 151 Beach Blvd, Biloxi, MS 39530. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

**133.** As pled above, Fertitta Entertainment, Inc., "owns" the public internet website www.goldenugget.com and the Golden Nugget mobile application and its goods and services offered on the app, and "operates" the world-wide websites services and mobile application services that are available to the public at the Golden Nugget. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web-based services, as alleged above.

**134.** Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

**135.** Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal

actions by Defendants.

### COUNT SEVEN
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.302 (e)(1)(i)-(ii)
### *(Failure to Integrate Website Accessibility)*

136.    Plaintiffs incorporate by reference and reallege all the paragraphs above.

137.    The ADA's legislative history provides that integration is fundamental to the

purposes of the ADA. Provision of segregated accommodations, goods and

services relegate persons with disabilities to be an inferior second-class citizen.

*H. Rep. 101–485(III), 101st Cong., \*1279 2d Sess., at 56, reprinted in 1990*

*U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped.*

*Separate-but-equal services do not accomplish this central goal and should be rejected.*"

*Id. at 50, 1990 U.S.C.C.A.N. at 473.*

138.    Congress enacted the ADA in light of its findings that "individuals with

disabilities continually encounter various forms of discrimination, including

outright intentional exclusion, the discriminatory effects of architectural,

transportation, and communication barriers, overprotective rules and policies,

failure to make modifications to existing facilities and practices, exclusionary

qualification standards and criteria, segregation, and relegation to lesser

services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C.

12101(a)(5).

139.    Legislative history indicates that websites of public accommodations are

covered by Title III. Although the internet did not exist when Congress enacted

the ADA in 1990, the legislative histories state that Congress intended to

include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations.  Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations through their websites.  *See Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565, 574 (D. Vt. 2015).

140.    The Justice Department has long affirmed the application of Title III to the websites of public accommodations. *The statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also <u>*Netflix*</u>, 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." <u>Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,</u>* 37 F.3d 12, 20 (1st Cir. 1994).

141.    Today, internet technology enables individuals to participate actively in their community and engage in virtually all forms of commerce from the comfort and convenience of their home, to the extent that virtual reality through the internet is almost as important as physical reality in brick-and-mortar constructed public accommodations, in pursuing commerce from public accommodations. That websites were not explicitly written into the ADA at its passage in the early 1990s but are nevertheless covered does not indicate ambiguity in the ADA, but rather the breadth of the ADA. <u>*Andrews v. Blick Art*</u>

*Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

142. Defendants did not allow Plaintiffs to use the website in the same manner as individuals without disabilities, because the website fails to integrate alternative platforms that enable disabled individuals who have limited use of their hands the opportunity to use the alternative platforms to navigate and select items on the page. The able-bodied online website user can only use a mouse to navigate, whereas individuals who have limited use of their hands cannot use assistive technology to navigate through the website. Moreover, Defendants provide a plethora of services and associated benefits, including but not limited to: deals, dining options, shopping options, hotel amenities and features, casino features, nightlife and entertainment, access to Landry's Select Club and Golden Nugget 24K Select Club rewards, among other services to able-bodied individuals, but fails to provide those same services to disabled individuals which relegates and otherwise segregates disabled individuals to inferior benefits and services of Golden Nugget.

143. The design of Defendants' web site impedes Plaintiffs and others similarly situated from accessing the services, privileges and accommodations afforded able-bodied patrons through the web platform. The website fails to integrate alternative access methods that allow a person with limited manual dexterity to access the information and navigate the web site without being able to use a mouse. That is, the website design does not provide for functions to be carried out using a keyboard or voice input. On their website, Defendants provide a plethora of services and associated benefits, including but not limited

to: deals, dining options, shopping options, hotel amenities and features, casino features, nightlife and entertainment, access to Landry's Select Club and Golden Nugget 24K Select Club rewards, among other services to the general public, but fails to provide those same services to persons with disabilities. Such actions relegate and otherwise segregate persons with disabilities to inferior benefits and services offered by Golden Nugget.

144. As pled previously, intangible barriers to access are prohibited, just as tangible barriers are prohibited.

145. The actions by the Defendants violate:

   a) 42 U.S.C. § 12182(a), because its actions deny Plaintiffs full and equal enjoyment of Defendants' goods and services;

   b) 42 U.S.C. § 12182(b)(1)(A)(i), because Defendants' actions deny Plaintiffs equal participation in goods and services offered by the Defendants;

   c) 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiffs are provided both separate and unequal benefits of Defendants' goods and services;

   d) 42 U.S.C. § 12182(b)(1)(B), because Defendants do not provide their goods and services in the most integrated setting appropriate;

   e) 28 C.F.R. 36.303(c), because Defendants have failed to provide auxiliary aids and services where necessary to ensure effective communication with the disabled Plaintiffs.

146. Plaintiffs do not allege that there are a particular set of mandatory regulations for websites that establish compliance or non-compliance as a matter of law.

Plaintiffs plead, consistent with the Department of Justice determinations, that in achieving such conformance and usability of websites by individuals with disabilities, Defendants should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

147.   To date, the Defendants' discriminating actions continue.

148.   As pled above, Fertitta Entertainment, Inc., is the "owner" of the public internet website www.goldennugget.com and "operates" the world-wide websites services that are available to the public at Golden Nugget. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web-based services, as alleged above. 42 U.S.C. § 12182.

149.   Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

150.   Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal

actions by Defendants.

## COUNT EIGHT
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(2)(A)(iii)
*(Failure to Provide Services Necessary to*
*Ensure Equal Access to Innovative Technology)*

151.    Plaintiffs incorporate by reference and reallege all the paragraphs above.

152.    The ADA was the most sweeping civil rights legislation since the Civil Rights
Act of 1964. When it was enacted Congress had no conception of how the
Internet would change global commerce. "[W]e were not communicating by e-
mail, blog, or tweet; we were not filling virtual shopping carts with clothes,
books, music, and food; we weren't banking, renewing our driver's licenses,
paying taxes or registering for and taking classes online. Congress could not
have foreseen these advances in technology. Despite Congress' great cognitive
powers, it could not have foreseen these advances in technology which are now
an integral part of our daily lives. Yet Congress understood that the world
around us would change and believed that the nondiscrimination mandate
contained in the ADA should be broad and flexible enough to keep pace."
*Achieving the Promises of the Americans with Disabilities Act in the Digital Age—*
*Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the*
*Constitution, Civil Rights, and Civil Liberties of the House Comm. on the*
*Judiciary,* 111th Cong., 2d Sess. 111–95 (2010).

153.    Since the internet plays such a critical role in the personal and commercial lives
of Americans, excluding disabled persons from access to covered entities that
use the internet and mobile applications as a means of reaching the public

would defeat the purpose of this important civil rights legislation. In today's society, places of public accommodation are increasingly using mobile applications ("mobile apps") to provide services, benefits and goods more effectively to the public and expand the services the public accommodation has to offer in new ways. These services that are provided via a public accommodation for web applications, mobile application, and hybrid applications ("mobile platform") also need to be provided to disabled individuals.

154.   ADA Title III states that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated by DOJ implementing Title III require public accommodations to provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Auxiliary aids and services include . . . *accessible electronic and information technology*, among other methods. 28 C.F.R. § 36.303(b). Auxiliary aids and services also includes acquisition or modification of equipment or devices, and other similar services and actions. 28 C.F.R. 36.303(b)(3)-(4).

155.  The plain language of these statutory provisions applies to discrimination in offering the goods and services ''of'' a place of public accommodation or the services, programs, and activities ''of'' a public entity, rather than being limited to those goods and services provided ''at'' or ''in'' a place of public accommodation or facility of a public entity.

156.  The ADA and the Title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication between the two. Defendants have chosen to provide a service through a mobile application to view offers, promotions, entertainment options, dining options, casino features, hotel amenities and features, casino features, access to Golden Nugget 24K Club rewards, among other services through the mobile platform. The Defendants communicate all of that to able-bodied individuals as a service. Yet, Defendants' use of their mobile application and the services they offer through the application does *not* communicate and provide services to the disabled individuals. This is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]" and that technological advances "may require public*

*accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities*." *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

157.   The unlawful implementation of eligibility criteria in other contexts that are clearly covered by the Act is analogous to the Defendants' effective screening of Plaintiff from using its mobile app. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendants screened guests as they entered, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater.*"). ("*An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store'. Accordingly, the site of the sale is irrelevant. All that matters is whether the good or service is offered to the public.* (*Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015). The Defendants' failure to permit or include assistive technology in relation to their mobile app directly and physically screens and prevents the Plaintiff from being able to use the mobile app, just as if Defendants in their establishment placed items outside the Plaintiffs' reach

and said Plaintiffs cannot have the items unless Plaintiffs can get the items for themselves.

158.   In our contemporary technological society, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Netflix*, 869 F.Supp.2d at 200 (quoting *Carparts,* 37 F.3d at 20). (quoting *Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015).

159.   Defendants diminish Plaintiffs' rights under the ADA to fully participate in all aspects of society, which is counter to Congress' goal. Defendants' ableism, as described throughout the Complaint, is excluding Plaintiff from equality of opportunity, full participation, independent living, and economic self-sufficiency and in doing so excludes Plaintiff from a plethora of goods and services that are offered through the mobile platform which includes but is not limited to the following:

   a)   Defendants are excluding, denying services, and otherwise segregating Plaintiffs from all of the benefits and services Defendants offer through their mobile apps as a result of their failure to modify their mobile application platform to allow assistive technology, which includes, but is not limited to, voice recognition, alternative input methods, assistive touch functions, among other accessibility methods that Plaintiffs require, to compete on an equal basis and maintain independent self-

sufficiency;

**b)**   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view promotions and offers through the mobile apps;

**c)**   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various hotel features and options at Golden Nugget through the mobile apps;

**d)**   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to book hotel rooms and suites through the mobile apps;

**e)**   Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various dining options at Golden Nugget through the mobile apps;

**f)**   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various casino features and options at Golden Nugget through the

mobile apps;

g)   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various entertainment options at Golden Nugget and purchase tickets through the mobile apps;

h)   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various amenities at the Golden Nugget through the mobile apps;

i)   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view and access Golden Nugget 24K Select Club rewards through the mobile apps;

j)   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view a property map of the Golden Nugget through the mobile apps;

k)   Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to

access and view all of the benefits of Golden Nugget through the use of the mobile apps;

**l)**   Defendants are excluding, denying services, and otherwise segregating Plaintiffs as a result of their failure to modify equipment, devices and/or other similar services. 28 *C.F.R.* § 36.303(b)(3)-(4).

**m)**   Defendants are excluding, denying services, or otherwise segregating Plaintiffs of all the goods and services offered on its mobile apps as a result of Defendants' failure to design their mobile apps that enable alternative assistive technology;

160.   The design of Defendants' mobile app impedes Plaintiffs and others similarly situated from accessing the services, privileges and accommodations afforded patrons through the mobile app. The mobile app fails to integrate alternative access methods that allow a person with limited manual dexterity in their hands to access the information and navigate the mobile app.

161.   The actions by the Defendants violate:

**a)**   42 U.S.C. § 12182(a), because Defendants' actions deny Plaintiffs full and equal enjoyment of Defendants' goods and services;

**b)**   42 U.S.C. § 12182(b)(1)(A)(i), because Defendants' actions deny Plaintiffs equal participation in goods and services offered by the Defendants;

**c)**   42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiffs are provided both separate and unequal benefits of Defendants' goods and services;

**d)**   42 U.S.C. § 12182(b)(1)(B), because Defendants do not provide their

goods and services in the most integrated setting appropriate;

**e)** 28 C.F.R. 36.303(c), because Defendants have failed to provide auxiliary aids and services where necessary to ensure effective communication with the disabled Plaintiffs.

162. Plaintiffs do not allege that there are a particular set of mandatory regulations for mobile applications that establish compliance or non-compliance as a matter of law. Plaintiffs plead, consistent with the Department of Justice determinations, that in achieving such conformance and usability of mobile apps by individuals with disabilities, Defendants should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

163. To date, the Defendants' discriminating actions continue.

164. As pled above Fertitta Entertainment, Inc., "owns" and "operates" the Golden Nugget mobile application and its goods and services offered on the mobile app, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

165. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable

attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

166.   Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

   **WHEREFORE**, premises considered, Patrick Dunn and Hope Elly demand judgment against the Defendants on Counts One through Seven and requests the following injunctive and declaratory relief:

1.   That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.   That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.   That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin the Defendants to make their business practices consistent with ADA Title III in the future;

4.   That the Court enter an order directing the Defendants to provide Plaintiffs full and equal access both to the Golden Nugget experience and to the use of the Golden Nugget facility, and further order the Defendants to maintain the

required accessible features at the establishment so that Plaintiffs and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

6.  That the Court enjoin the Defendants to remediate Golden Nugget to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.  That the Court enter an order enjoining compliance with federal regulations and statutes as to the adequacy of the reservation system for individuals with disabilities, as stated in Count Five;

8.  That the Court enter an order requiring that Defendants adopt and implement a website accessibility policy and take the necessary actions to make their website accessible to the Plaintiffs, as particularly described in Count Seven;

9.  That the Court enter an order requiring Defendants to place on their homepage a statement concerning its website accessibility policy; provide training to all their workers and associates who write or develop programs or code; and test their website quarterly to identify and repair any incidence of nonconformance;

10. That the Court enter an order requiring Defendants to adopt and implement a mobile application accessibility policy and take the necessary actions to make

their mobile application accessible to the Plaintiff, as particularly described in Count Eight;

11.   That the Court enter an order requiring Defendants to place on their mobile application a statement covering their mobile application accessibility policy; provide training to all their workers and associates who write or develop the programs and code for the mobile application; and test the mobile application quarterly to identify and repair any indication of non-conformance;

12.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

13.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the ___ Day of July, 2018.

/s/ _____
**BRADLEY D. MCADORY**
**BPR # MS-10545**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this ___ day of July, 2018 to the following:


**RIVERBOAT CORPORATION OF MISSISSIPPI**
c/o C.T. Corporation System
Attn.: Registered Agent
645 Lakeland East Drive, Suite 101
Flowood, MS 39232


**GOLDEN NUGGET BILOXI, INC.**
c/o C.T. Corporation System
Attn.: Registered Agent
645 Lakeland East Drive, Suite 101
Flowood, MS 39232


**FERTITTA ENTERTAINMENT, INC.**
c/o C T Corporation System
Attn.: Registered Agent
645 Lakeland East Drive, Suite 101
Flowood, MS 39232


/s/ _____
**BRADLEY D. MCADORY**
**BPR # MS-10545**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*